IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALFONZO CAMAJA BLANCO,

       Petitioner,

          v.                                         Civil Action No. 3:26cv183

KRISTI NOEM, *et al.*,

       Respondents.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Alfonzo Camaja Blanco's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). (ECF No. 1.) In the Petition, Mr. Camaja Blanco challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE's failure to provide him with a bond hearing under 8 U.S.C. § 1226 violates his statutory right to such a hearing and his constitutional right to due process under the Fifth Amendment to the United States Constitution.[1] (ECF No. 1 ¶¶ 59–63, 70–76.)[2]

---

[1] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

[2] Mr. Camaja Blanco also argues that his detention violates his substantive due process rights, (ECF No. 1 ¶¶ 64–69), and he seeks a declaratory judgment "that the only potentially proper grounds for his detention (if any) is 8 U.S.C. § 1226(a)," (ECF No. 1 ¶ 6). Because the Court will grant relief on procedural due process grounds, it need not address Mr. Camaja Blanco's arguments based on substantive due process or his request declaratory relief.

For the reasons articulated below, the Court will grant the Petition. (ECF No. 1.) The Court will order Respondents to provide Mr. Camaja Blanco with a bond hearing under 8 U.S.C. § 1226(a).

## I.  Factual and Procedural Background

### A.    Factual Background[3]

Mr. Camaja Blanco is a citizen and native of Guatemala. (ECF No. 1 ¶¶ 16, 23; ECF No. 1-1 ¶ 1.) In 2019, Mr. Camaja Blanco entered the United States without inspection by immigration authorities. (ECF No. 1 ¶ 24; ECF No. 1-1 ¶ 2.) Petitioner fled Guatemala with one of his children "to escape threats by the MS-13 gang and persecution due to his ethnicity as an indigenous Mayan, as well as to find work and provide a safer and better future for his children." (ECF No. 1 ¶ 24; ECF No. 1-1 ¶ 3.) Within one year of his arrival in the United States, Petitioner applied for asylum. (ECF No. 1 ¶ 26; ECF No. 1-1 ¶ 2.) His asylum application remains pending. (ECF No. 1 ¶ 26; ECF No. 1-1 ¶ 2.)

In 2019, Respondents issued Mr. Camaja Blanco a Notice to Appear[4] ("NTA") charging him with being an "alien present in the United States without being admitted or paroled" and removable under 8 U.S.C. § 1182(a)(6)(A)(i). (ECF No. 1-2, at 2.)

On January 7, 2026, ICE detained Mr. Camaja Blanco while he was on his way to work in Washington, D.C. (ECF No. 1 ¶ 31.) ICE officers pulled Petitioner over, asked for his

---

[3] As discussed below, the Court proceeds by dispelling with additional briefing and incorporating Respondents' filings in this Court's decision in *Duarte Escobar v. Perry*, 3:25-cv-758 (MHL) (E.D. Va. 2025). Respondents have recently represented to the Court that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*." (ECF No. 6, at 1.) Accordingly, the Court's recitation of the factual background relies on the facts as alleged in the Petition.

[4] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 648 n.3 (E.D. Va. 2025).

identification and vehicle registration, and told him "that they were going to take him away." (ECF No. 1 ¶ 31.) The officers "did not say that he had committed any violation or otherwise tell him why he was being stopped or arrested." (ECF No. 1 ¶ 31.)

After his arrest, the ICE officers transported Mr. Camaja Blanco to an immigration office. (ECF No. 1 ¶ 31.) He then spent several nights in different detention facilities before arriving at the Farmville Detention Center ("Farmville"), "where he has been detained without bond ever since." (ECF No. 1 ¶ 31.) While at Farmville, Petitioner "requested medical and dental assistance, including for a toothache and head pain related to a prior injury, but he has not yet received that care." (ECF No. 1 ¶ 31.)

Mr. Camaja Blanco has a wife and three minor children with whom he lived in the Baltimore, Maryland area prior to his detention. (ECF No. 1 ¶ 27.) Petitioner is "very close with his children and is actively involved in their daily upbringing and care, including taking them to school each morning and picking them up each afternoon, cooking for them, and taking them to doctor's appointments." (ECF No. 1 ¶ 29; ECF No. 1-1 ¶ 13.) Mr. Camaja Blanco is the sole financial provider for his family. (ECF No. 1 ¶ 27; ECF No. 1-1 ¶ 8.) He owns and operates his own construction company, through which he employs four employees. (ECF No. 1 ¶ 27.) Petitioner's detention has been stressful and financially devastating for his wife and children, and his business has suffered. (ECF No. 1 ¶¶ 34–36; ECF No. 1-1 ¶¶ 14–16.)

Petitioner argues that he is entitled to a bond hearing under 8 U.S.C. § 1226(a), but that he "is being detained" under 8 U.S.C. § 1225 "without the opportunity for a bond hearing" as a result of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec.

216 (BIA 2025).  (ECF No. 1 ¶¶ 2–3.)[5]  Mr. Camaja Blanco seeks release from custody or a Court order requiring the Immigration Court to hold a bond hearing.  (ECF No. 1 ¶ 6.)

Prior to his current detention, Petitioner "ha[d] never been arrested or detained."  (ECF No. 1 ¶ 30.)  If released, Petitioner "will return to live with his wife and children at their home in Baltimore."  (ECF No. 1 ¶ 36.)

"A removal hearing is scheduled for Mr. Camaja Blanco on March 18, 2026."  (ECF No. 1 ¶ 25.)

### B.     Procedural Background

On March 10, 2026, Mr. Camaja Blanco filed the instant Petition.  (ECF No. 1.)  On March 11, 2026, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Petition differ in any material fashion from those presented in *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025).  (ECF No. 4.)  The Court further ordered that, if Respondents indicated that the factual and legal issues presented in the Petition do not differ in any material fashion from those presented in *Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into this habeas proceeding, and this Court [would] issue a ruling without further filings from the parties."  (ECF No. 4, at 1–2.)

On March 13, 2026, Respondents filed a Notice in response to the Court's March 11, 2026 Order.  (ECF No. 6.)  In the Notice, Respondents "submit that the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented

---

[5] On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*.  "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

4

in *Duarte Escobar*[.]" (ECF No. 6, at 1.) "[C]onsistent with [the Court's] recent order," Respondents contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 6, at 1.) On March 16, 2026, Petitioner filed a response to Respondents' Notice, which the Court construes as a reply. (ECF No. 7.)

The Court incorporates the parties' merits briefing in *Duarte Escobar* into the record. *See Duarte Escobar*, No. 3:25-cv-758 (MHL), ECF Nos. 16, 18, 19, 20 (E.D. Va. 2025). The Court also dispels with any further briefing by the parties.

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Analysis

The central question posed in Mr. Camaja Blanco's Petition is whether he is entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[6] or whether he is subject to the mandatory

---

[6] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

5

detention provision of 8 U.S.C. § 1225(b)(2)(A).[7] Petitioner contends that 8 U.S.C. § 1226 entitles him to a bond hearing. Specifically, Mr. Camaja Blanco argues that (1) the discretionary detention provisions of 8 U.S.C. § 1226(a) entitle him to a bond hearing, (ECF No. 1 ¶¶ 59–63); and (2) that his Fifth Amendment due process rights bolster his entitlement to such a hearing, (ECF No. 1 ¶¶ 70–76).

In opposition, Respondents rely on their arguments incorporated by this Court from *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025).[8] Here, as in *Duarte Escobar*,

---

> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole.

8 U.S.C. § 1226(a)(1)–(2).

[7] 8 U.S.C. § 1225 provides, in pertinent part:

> (b) Inspection of applicants for admission
>
>> (2) Inspection of other aliens
>>
>>> (A) In general
>>>
>>> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

[8] Respondents' arguments have also been raised and decided throughout the country. The vast majority of courts addressing this issue have concluded that 8 U.S.C. § 1226(a) pertains, meaning petitioners like Mr. Camaja Blanco should receive a bond hearing. *See Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that

6

Respondents insist (1) that the Court lacks jurisdiction over the Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"), (*Duarte Escobar*, ECF No. 18, at 7–8); (2) that even if the Court has jurisdiction over the Petition, Mr. Camaja Blanco's detention is lawful under 8 U.S.C. § 1225's mandatory detention provisions, (*Duarte Escobar*, ECF No. 18, at 8–20); and (3) that Mr. Camaja Blanco's constitutional due process rights have not been violated, (*Duarte Escobar*, ECF No. 18, at 20–28).[9]

The parties' arguments as to all challenges raised are substantially similar to others made in recent § 2241 habeas actions in the Eastern District of Virginia, including many cases decided

---

"of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here").

In addition, dozens of courts in the Eastern District of Virginia (including this Court) have rejected Respondents' position on eminently sound bases. *See Velasquez v. Noem*, No. 3:25-cv-998 (MHL), 2026 WL 279226, at *4 n.14 (E.D. Va. Feb. 3, 2026) (collecting thirty cases rejecting Respondents' argument in this District alone).

A small minority of district courts have accepted Respondents' arguments. *See, e.g.,* *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1140–43 (D. Neb. 2025). These decisions do not alter this Court's determination.

Recently, the United States Court of Appeals for the Fifth Circuit joined these courts. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The Fifth Circuit's decision is not binding here. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's reasoning for many of the reasons cogently set forth in Judge Douglas' dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent.

[9] Respondents, in their arguments as incorporated from *Duarte Escobar*, do not argue that Mr. Camaja Blanco has failed to exhaust his administrative remedies, and they therefore waive any argument on this point. The Court notes, however, that even had Respondents raised an exhaustion defense, they would not prevail, because exhausting Mr. Camaja Blanco's administrative remedies prior to filing his Petition would be futile. *See Duarte Escobar*, 807 F. Supp. 3d at 572.

7

by this Court. *See, e.g.*, *Duarte Escobar*, 807 F. Supp. 3d 564; *Perez-Gomez v. Warden*, No. 3:25-cv-773 (MHL), 2025 WL 3141103 (E.D. Va. Nov. 10, 2025) (rejecting the same arguments made in *Duarte Escobar*); *Contreras-Perez v. Noem*, No. 3:25-cv-882 (MHL), 2025 WL 3281774 (E.D. Va. Nov. 25, 2025) (same); *Campos Flores v. Bondi*, No. 3:25-cv-797 (MHL), 2025 WL 3461551 (E.D. Va. Dec. 2, 2025) (same); *Velasquez v. Noem*, No. 3:26-cv-998 (MHL), 2026 WL 279226 (E.D. Va. Feb. 3, 2026) (same); *Espinoza Camacho v. Perry*, No. 3:26-cv-76 (MHL), 2026 WL 414937 (E.D. Va. Feb. 15, 2026) (same); *Avelar Ramos v. Bondi*, No. 3:26-cv-112 (MHL), 2026 WL 614875 (E.D. Va. Mar. 4, 2026); *Lopez-Diaz v. Crawford*, No. 3:25-cv-1039 (MHL), 2026 WL 625492 (E.D. Va. Mar. 6, 2026) (same); *Pacheco Tum v. Perry*, No. 3:26-cv-153 (MHL), 2026 WL 711964 (E.D. Va. Mar. 13, 2026) (same). Respondents raise no new arguments that would compel a different outcome.

The Court concludes that 8 U.S.C. § 1226(a) and the Fifth Amendment entitle Mr. Camaja Blanco to a bond hearing. Accordingly, the Court will grant the Petition.

## A. The Court Has Jurisdiction Over the Petition

As a threshold matter, this Court has jurisdiction to consider Mr. Camaja Blanco's Petition. Respondents argue that the Court lacks subject-matter jurisdiction over the Petition because two provisions of the INA strip the Court of jurisdiction over the Petition: 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g). (*Duarte Escobar*, ECF No. 18, at 7–8.)

As this Court held in *Duarte Escobar*, neither 8 U.S.C. §§ 1252(b)(9)[10] nor 1252(g)[11]

---

[10] For instance, 8 U.S.C. § 1252(b)(9) does not divest this Court of its habeas jurisdiction because Mr. Camaja Blanco does not seek review of a removal order. *Duarte Escobar*, 807 F. Supp. 3d at 573–74 (citing *Jennings v. Rodriguez*, 583 U.S. 294–95 (2018) (plurality opinion)).

[11] 8 U.S.C. § 1252(g) likewise does not divest the Court of its habeas jurisdiction because this case does not involve commencement, adjudication, or execution of any immigration order. *Duarte Escobar*, 807 F. Supp. 3d at 574–75 ("[Section] 1252(g) does not apply 'to *all* claims

divests this Court of jurisdiction under 28 U.S.C. § 2241 to review Mr. Camaja Blanco's

Petition. *Duarte Escobar*, 807 F. Supp. 3d at 572–75; *see also Luna Quispe v. Crawford*, No.

1:25-cv-1471 (AJT), 2025 WL 2783799, at *2–3 (E.D. Va. Sept. 29, 2025). The Court has

jurisdiction to consider the merits of the Petition and proceeds to the substance of Petitioner's

claim.

      **B.**    **Mr. Camaja Blanco is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226**

      With respect to the substance of Petitioner's claim, Mr. Camaja Blanco argues that his

detention is governed by the discretionary detention provisions of § 1226 rather than the

mandatory detention provisions in § 1225(b)(2). (ECF No. 1 ¶¶ 59–63.) According to

Respondents, Mr. Camaja Blanco's detention is lawful under the INA because Mr. Camaja

Blanco was not legally granted entry into the country and is therefore an "applicant for

admission," meaning § 1225(b)(2) governs his detention. (*Duarte Escobar*, ECF No. 18, at 8–

20.)

      For the reasons stated by this Court in *Duarte Escobar*, as well as the dozens of other

decisions issued by courts in this District on the same issue, this Court concludes that Petitioner's

detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s

mandatory detention procedures. 807 F. Supp. 2d at 575–81. This argument fails.

      Mr. Camaja Blanco has been present in the United States for over six years. (*See* ECF

No. 1 ¶¶ 16, 24; ECF No. 1-1 ¶ 2.) He is thus not an "applicant for admission" subject to the

mandatory detention provisions of § 1225 but rather falls within the discretionary detention

provisions of § 1226(a) governing aliens who are already in the country. *See Jennings v.*

---

arising from deportation proceedings.'" (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471, 482 (1999) (emphasis added))).

*Rodriguez*, 583 U.S. 281, 288–90, 303 (2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country").[12]  For the reasons set out in *Duarte Escobar*, the plain text of the INA,[13] Supreme

---

[12] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025).  But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 217–18 (D. Mass. 2025).  The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum.  "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024).  Indeed, the United States District Court for the Central District of California issued a nationwide declaratory judgment and vacatur under the Administrative Procedure Act against ICE's internal policy mandating that immigration detainees remain detained without a bond hearing. *Bautista v. Santacruz*, —F. Supp. 3d—, 2025 WL 3713987 (C.D. Cal. 2025), *judgment stayed in part*, 5:25-cv-1873, ECF No. 129 (C.D. Cal. Mar. 6, 2025).  In doing so, the *Bautista* court found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on a faulty statutory analysis, which *Bautista* rejected. *Id.* at *12; *see also Duarte Escobar*, 807 F. Supp. 3d at 580.  While the United States Court of Appeals for the Ninth Circuit recently stayed enforcement of the nationwide relief in *Bautista*, *Bautista v. Santacruz*, 5:25-cv-1873, ECF No. 129 (C.D. Cal. Mar. 6, 2025), the Court agrees with the *Bautista* court's finding.

[13] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2).  The statute's use of active language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States.  Presence in the country is not enough. *Duarte Escobar*, 807 F. Supp. 3d at 576.  To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous. *Id.* at *9–10.

Court precedent, district court decisions around the country, and decades of practice support this conclusion. 807 F. Supp. 3d at 575–81. Petitioner is therefore entitled to a bond hearing under § 1226(a) and its implementing regulations.

### C.    Mr. Camaja Blanco's Fifth Amendment Due Process Rights Have Been Violated

Finally, Petitioner argues that his detention without a bond hearing violates his due process rights under the Fifth Amendment's Due Process Clause. (ECF No. 1 ¶¶ 70–76) Respondents contend that Petitioner's due process rights are governed only by the INA, rather than the Fifth Amendment's Due Process Clause, and that even if Petitioner is subject to the Fifth Amendment's due process protections, denying him a bond hearing does not violate his constitutional rights.

For the reasons articulated in *Duarte Escobar*, the Court finds that Mr. Camaja Blanco's due process rights are governed by the Fifth Amendment and that his continued detention under 8 U.S.C. § 1225 without a bond hearing violates his due process rights. 807 F. Supp. 3d at 581–84. Specifically, the Court finds that all three *Mathews* factors weigh in Mr. Camaja Blanco's favor: (1) he has a strong private interest in remaining free from physical detention; (2) there is a significant risk of erroneous deprivation of his due process rights because he is entitled to a bond hearing under § 1226(a) that he has not received; and, (3) respondents have failed to demonstrate a compelling government interest in detaining Petitioner without a bond hearing. *See Duarte Escobar*, 807 F. Supp. 3d at 581–84 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

11

**D.   The Proper Remedy for this Violation is to Provide Mr. Camaja Blanco with a Bond Hearing During Which Respondents Maintain the Burden of Proof**

Mr. Camaja Blanco argues that "immediate release . . . would be an appropriate remedy for Respondents' constitutional violations in this case, including the lack of pre-deprivation notice or individualized review before Mr. Camaja Blanco's arrest, which cannot be remedied by a post-deprivation hearing."[14] (ECF No. 1 ¶ 68.)

In their response as incorporated from the briefing in *Duarte Escobar*, Respondents assert that a bond hearing is the only appropriate remedy and that at a bond hearing, Mr. Camaja Blanco should bear the burden of establishing whether he is a flight risk or poses a risk of

---

[14] Mr. Camaja Blanco does not describe the pre-deprivation notice or individualized review he argues he should have been afforded prior to his arrest. Moreover, the cases Petitioner cites in support of his argument for immediate release do not persuade the Court that immediate release, rather than a bond hearing, is the only appropriate remedy in these circumstances.

For example, Petitioner cites *Alfaro Herrera v. Baltazar*, in which the United States District Court for the District of Colorado ordered the petitioner's immediate release because an immigration judge had, several years prior, released the petitioner after determining that he was not a risk of flight or a risk of danger. No. 1:25-cv-4014, 2026 WL 91470, at *8–9, *13 (D. Colo. Jan 13, 2026). That is, the *Alfaro Herrera* court's release of the petitioner did not depend on an allegation of "the lack of pre-deprivation notice or individualized review before . . . arrest." Similarly, in *Qasemi v. Francis*, No. 1:25-cv-10029, 2025 WL 3654098, at *2, *5 *14 (S.D.N.Y. Dec. 17, 2025), the petitioner was previously detained by ICE but released on parole following a determination by ICE that he posed neither a risk of flight nor a risk of danger. Petitioner does not allege similar facts here.

Moreover, in his reply, Mr. Camaja Blanco argues that "[i]f the Court were only to order a bond hearing to be held within a specified period without also ordering the immediate release of Petitioner, then the individual merits hearing would almost surely occur before any bond hearing," which would "unfairly prejudice Petitioner, as the outcome of the individual merits hearing may impact Petitioner's ability to obtain bond." (ECF No. 7, at 2.) To ensure that Mr. Camaja Blanco's bond determination is not impacted by the outcome of any prior removal hearing, the Court will order that Petitioner receive a bond hearing prior to any immigration hearing on the merits.

The Court finds, for the reasons explained *infra*, that ordering a bond hearing rather than releasing Mr. Camaja Blanco is a sufficient remedy in the present circumstances.

12

danger. (*Duarte Escobar*, ECF No. 18, at 28–29.)

For three reasons, the Court will order Respondents to provide Mr. Camaja Blanco with a bond hearing rather than immediate release. But the Court will require Respondents to bear the burden of proof at that bond hearing.

First, ordering a bond hearing allows the Court to tailor its remedy to the specific injury alleged by Mr. Camaja Blanco: deprivation of his access to a bond hearing. *Avelar Ramos*, 2026 WL 614875, at *5. Second, providing Mr. Camaja Blanco with a bond hearing aligns with the INA's statutory scheme, through which Congress and DHS, in enacting § 1226 and promulgating its implementing regulations, "have determined that an Immigration Judge is best situated to make a determination about whether an alien is a potential danger to the community or is a flight risk." *Id.* at *6. And third, the circumstances in which district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit have ordered immediate release instead of a bond hearing are not present here. *Id.* For example, this Court has neither been "confronted with petitioners who have been detained, released, and re-detained by immigration officials," nor with evidence of Respondents' failure to comply with this Court's orders. *See id.* The Court will therefore order Respondents to provide Petitioner with a bond hearing rather than order his immediate release.

The Court will require Respondents to carry the burden of proof at that bond hearing. As this Court explained in *Avelar Ramos*, given Respondents' "abject denial of [Mr. Camaja Blanco's] entitlement to a bond hearing, due process calls for additional safeguards to protect that entitlement." 2026 WL 614875, at *7–8.[15] Requiring Respondents to carry the burden of

---

[15] In *Avelar Ramos*, this Court distinguished circumstances like the present—where a noncitizen petitioner detained under § 1226 was denied a bond hearing—from those addressed in the Fourth Circuit's decision in *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022). *Avelar*

13

proof is one such safeguard.

Accordingly, the Court will order Respondents to provide Petitioner with a bond hearing during which Respondents will bear the burden of showing whether Mr. Camaja Blanco is a danger or a flight risk by clear and convincing evidence.

## IV.  Conclusion

Because § 1226(a) sets for "the default rule" for detaining and removing aliens "already present in the United States," *Jennings*, 583 U.S. at 202, Petitioner's detention is governed by § 1226(a).  Under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community or that he is a flight risk if Respondents seek to continue detaining Mr. Camaja Blanco.  8 U.S.C. § 1226(a); *Avelar Ramos*, 2026 WL 614875, at *7–8.  Unless and until Respondents meet that burden, Mr. Camaja Blanco's continued detention is unlawful.

---

*Ramos*, 2026 WL 614875, at *7–8.  As this Court explained, the *Miranda* court held that placing the burden of proof on a noncitizen to prove that he or she was not a risk of danger or a risk of flight did not violate due process because the noncitizen was afforded *three opportunities* to seek release from detention.  *Id.* (citing *Miranda*, 34 F.4th at 358–65).

The present situation, as in *Avelar Ramos*, differs from that at issue in *Miranda* because Mr. Camaja Blanco "has been denied access to a bond hearing entirely."  *Id.*; *see also Pineda-Medrano v. Bondi*, No. 1:25-cv-01870 (AJT), 2025 WL 3472152, at *3 n.5 (E.D. Va. Dec. 3, 2025) ("[N]owhere in [*Miranda*] did the Fourth Circuit hold—explicitly or implicitly—that the failure to comport with the procedures contemplated in section 1226(a), including the provision of a bond determination hearing, would also satisfy due process.").

14

15

For the reasons articulated above, the Court will grant Mr. Camaja Blanco's Petition, (ECF No. 1), and order that he be provided a bond hearing with an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

An appropriate Order shall issue.

Date: 3/17/26
Richmond, Virginia

/s/
_____
M. Hannah Lauck
Chief United States District Judge

15